1

2

3

4                    **UNITED STATES DISTRICT COURT**
                          **DISTRICT OF NEVADA**
5                           **RENO, NEVADA**

6

7

DAVID K. FAGIN, ROGER NEWELL,      )    3:08-cv-00314-ECR-RAM
8 and RICHARD A. STARK, each an     )
individual, on behalf of           )
9 themselves and derivatively on    )
behalf of Nominal Defendant        )
10 WESTERN TITLE EXPLORATION AND     )
DEVELOPMENT LIMITED,               )    <u>**Order**</u>
11                                   )
        Plaintiffs,                 )
12                                   )
vs.                                )
13                                   )
DOBY GEORGE, LLC, a Nevada limited )
14 liability company, WOOD GULCH,    )
LLC, a Nevada limited liability    )
15 company, THEODORE J. DAY, HOWARD  )
M. DAY, CARMEN F. FIMIANI, and     )
16 BERNARD F. CARTER, each an        )
individual;                        )
17                                   )
        Defendants, and             )
18                                   )
WESTERN EXPLORATION AND            )
19 DEVELOPMENT LIMITED, a Canadian   )
corporation,                       )
20                                   )
        Nominal Defendant.          )
21 _____)

22

          Remaining in the case are Defendants/Counterclaimants'
23
counterclaims for abuse of process, interference with contractual
24
relations, and intentional interference with prospective economic
25
advantage.  Now pending is a motion for summary judgment (#63) filed
26
by Plaintiffs/Counterdefendants, arguing that the counterclaims fail
27

28

as a matter of law.  For the reasons stated below, the motion for summary judgment (#63) will be granted.

### I. Background

Plaintiffs/Counterdefendants (hereinafter "Plaintiffs") brought direct and derivative actions against Defendants/Counterclaimants ("Defendants") based on breach of fiduciary duties by Defendants to Western Exploration and Development Limited ("WEX") and its minority shareholders and investors.  Defendants asserted counterclaims for abuse of process, interference with contractual relations, and intentional interference with prospective economic advantage.

On April 2, 2010, Defendants moved for summary judgment (#25), arguing that Plaintiffs' derivative claims fail because WEX is a Yukon corporation and under Yukon law any derivative action must be commenced in the Yukon, and Plaintiffs' individual claims are barred by the statute of limitations.  On May 12, 2010, the Court granted (#49) Defendants' motion for summary judgment.  On May 12, 2010, judgment was entered (#50).  On June 11, 2010, Plaintiffs filed a notice of appeal (#51).

Our Order (#49), however, did not address the counterclaims (#15) asserted by Defendants against Plaintiffs, which had not yet been adjudicated.  The judgment (#50) was vacated (#56).  On November 8, 2010, the Ninth Circuit granted (#57) Plaintiffs' motion for voluntary dismissal of the appeal.

On January 5, 2011, Plaintiffs filed motion for summary judgment (#65) seeking dismissal of Defendants' counterclaims.  On

2

1  February 14, 2011, Defendants opposed (#68) the motion for summary
2  judgment on the counterclaims (#65).  On March 18, 2011, Plaintiffs
3  filed their reply (#73).

4

5                        **II. Summary Judgment Standard**

6       Summary judgment allows courts to avoid unnecessary trials
7  where no material factual dispute exists.  <u>N.W. Motorcycle Ass'n v.</u>
8  <u>U.S. Dep't of Agric.</u>, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court
9  must view the evidence and the inferences arising therefrom in the
10 light most favorable to the nonmoving party, <u>Bagdadi v. Nazar</u>, 84
11 F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment
12 where no genuine issues of material fact remain in dispute and the
13 moving party is entitled to judgment as a matter of law.  FED. R.
14 CIV. P. 56(c).  Judgment as a matter of law is appropriate where
15 there is no legally sufficient evidentiary basis for a reasonable
16 jury to find for the nonmoving party.  FED. R. CIV. P. 50(a).  Where
17 reasonable minds could differ on the material facts at issue,
18 however, summary judgment should not be granted.  <u>Warren v. City of</u>
19 <u>Carlsbad</u>, 58 F.3d 439, 441 (9th Cir. 1995), <u>cert. denied</u>, 116 S.Ct.
20 1261 (1996).

21      The moving party bears the burden of informing the court of the
22 basis for its motion, together with evidence demonstrating the
23 absence of any genuine issue of material fact.  <u>Celotex Corp. v.</u>
24 <u>Catrett</u>, 477 U.S. 317, 323 (1986).  Once the moving party has met
25 its burden, the party opposing the motion may not rest upon mere
26 allegations or denials in the pleadings, but must set forth specific
27 facts showing that there exists a genuine issue for trial.  <u>Anderson</u>

28                                    3

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Although the
parties may submit evidence in an inadmissible form — namely,
depositions, admissions, interrogatory answers, and affidavits —
only evidence which might be admissible at trial may be considered
by a trial court in ruling on a motion for summary judgment.  FED.
R. CIV. P. 56(c); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d
1179, 1181 (9th Cir. 1988).

In deciding whether to grant summary judgment, a court must
take three necessary steps: (1) it must determine whether a fact is
material; (2) it must determine whether there exists a genuine issue
for the trier of fact, as determined by the documents submitted to
the court; and (3) it must consider that evidence in light of the
appropriate standard of proof.  Anderson, 477 U.S. at 248.  Summary
judgment is not proper if material factual issues exist for trial.
B.C. v. Plumas Unified Sch. Dist., 192 F.3d 1260, 1264 (9th Cir.
1999).  "As to materiality, only disputes over facts that might
affect the outcome of the suit under the governing law will properly
preclude the entry of summary judgment."  Anderson, 477 U.S. at 248.
Disputes over irrelevant or unnecessary facts should not be
considered.  Id.  Where there is a complete failure of proof on an
essential element of the nonmoving party's case, all other facts
become immaterial, and the moving party is entitled to judgment as a
matter of law.  Celotex, 477 U.S. at 323.  Summary judgment is not a
disfavored procedural shortcut, but rather an integral part of the
federal rules as a whole.  Id.

///

///

4

### III. Analysis

Plaintiffs assert that Defendants' counterclaims for abuse of process, interference with contractual relations, and intentional interference with prospective economic advantage fail as a matter of law and must be dismissed. Specifically, Plaintiffs contend that Defendants have failed to present any evidence of actual harm or damages, and that Defendants have failed to present evidence of the essential elements of each counterclaim.

**A. Abuse of Process**

The elements of a claim for abuse of process are: "(1) an ulterior purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." Posadas v. City of Reno, 851 P.2d 438, 457 (Nev. 1993) (quoting Kovacs v. Acosta, 787 P.2d 368, 369 (Nev. 1990)).

Defendants brought a counterclaim for abuse of process based on Plaintiffs' commencement of suit against Defendants in Colorado, and in Nevada after the initial suit in Colorado was dismissed for lack of personal jurisdiction. Defendants assert that Plaintiffs brought the action with an ulterior purpose to "harass, coerce, intimidate and/or threaten [Defendants], and . . . to force [Defendants] to purchase their stock in WEX at an inflated price" by a "willful act in the use of process . . . not proper in the regular course of the proceeding." (Answer at ¶¶ 24-25 (#15).) The actual harm or resulting damage alleged by Defendants is summarized in their Answer and Counterclaim as an expenditure "in excess of $100,000.00" and continuing damage to their business reputations and additional

1  financial harms such as legal expenses in defending against the

2  underlying action.  (Id. ¶ 26.)

3       Defendants' counterclaim for abuse of process rests on

4  Plaintiffs' filing of this action.  Defendants are unable to allege

5  any other act that constitutes an abuse of process.  For purposes of

6  this Order, we assume, without so deciding, that Plaintiffs' purpose

7  in bringing this lawsuit was improper, because even assuming so,

8  Defendants' counterclaim fails as a matter of law.  Under Nevada

9  law, "the mere filing of [a] complaint is insufficient to establish

10 the tort of abuse of process."  Childs v. Selznick, Nos 49342,

11 51919, 2009 WL 3189335 at *2 (Nev. 2009) (quoting Laxalt v.

12 McClatchy, 622 F. Supp. 737, 752 (D. Nev. 1985)).  Plaintiffs assert

13 that Bull v. McCuskey holds differently.  See Bull v. McCuskey, 615

14 P.2d 957 (Nev. 1980) (abrogated on other grounds).  In Bull, the

15 Nevada Supreme Court held that it was permissible for the jury to

16 find abuse of process when the defendant "utilized an alleged claim

17 of malpractice for the ulterior purpose of coercing a nuisance

18 settlement" in "light of [defendant's] failure adequately to

19 investigate before deciding to file suit and the total absence of

20 essential expert evidence."  Id. at 960.  In Laxalt, quoted by the

21 Nevada Supreme Court in Childs, this Court found in Nevada, filing

22 of a complaint cannot constitute the willful act required to

23 establish abuse of process.  Laxalt, 622 F. Supp. at 751.  This

24 Court found that in Bull, the defendant abused the process by

25 "offering to settle the case for a minimal sum and by failing to

26 present proper evidence at trial."  Id. at 752.  As noted above, the

27 Nevada Supreme Court recently quoted this Court's ruling that filing

28

6

a complaint is insufficient for the tort of abuse of process, albeit in an unpublished case. Childs, 2009 WL 3189335 at *2. In general, other states also require more than the mere initiation of a lawsuit for the tort of abuse of process. See, e.g., Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc., 728 P.2d 1202, 1209 (Cal. 1986) ("the mere filing or maintenance of a lawsuit–even for an improper purpose–is not a proper basis for an abuse of process action"); Joseph v. Markovitz, 551 P.2d 571, 575 (Ariz. App. 1976) ("proof of abuse of process requires some act beyond the initiation of a lawsuit").

Furthermore, in Dutt v. Kremp, the Nevada Supreme Court discussed Bull and stated that the evidence that "[t]he attorney examined no medical records, conferred with no one, and then offered to settle the case for $750 . . . was sufficient to sustain the verdict for abuse of process against the attorney." Dutt v. Kremp, 894 P.2d 354, 360 (Nev. 1995) (overruled on other grounds by LaMantia v. Redisi, 38 P.3d 877, 880 (Nev. 2002)). Defendants argue that the language in several Nevada Supreme Court cases summarizing Bull as a case in which "respondent's attorney, with knowledge that there was no basis for the claim, brought suit against a physician for medical malpractice with the ulterior purpose of coercing a nuisance claim settlement," see, e.g., Posadas v. City of Reno, 851 P.2d 438, 445 (Nev. 1993), indicates that the filing of a complaint can alone serve as the basis for an abuse of process claim. We disagreed with that argument in Laxalt, and we find no reason to change our position now. Under our interpretation of Nevada law, the mere filing of a complaint is insufficient to sustain a claim of

abuse of process without "willful act[s] in the use of process not proper in the regular conduct of the proceeding." See Dutt, 894 P.2d at 360.

Defendants argue that the Nevada Supreme Court's holding in LaMantia v. Redisi requiring a prior criminal proceeding for a malicious prosecution claim indicates that the Nevada Supreme Court would change its position on abuse of process claims if it were confronted with the issue again. Because Nevada no longer recognizes a claim of malicious prosecution based on the filing of a civil action, Defendants reason, Nevada must allow abuse of process claims based on that conduct or a party would be left without a remedy. We do not agree that the Nevada Supreme Court must change its position on abuse of process claims due to LaMantia. Indeed, the entire problem with Defendants' abuse of process counterclaim against Plaintiffs is that Defendants are unable to present any evidence of improper use of process beyond the filing of the complaint. If Plaintiffs engaged in behavior that would typically fall under abuse of process, Defendants would not need to petition this Court to predict that the Nevada Supreme Court would change course from the general rule holding that abuse of process requires more than the mere filing of a lawsuit.

Therefore, Defendants' counterclaim for abuse of process must be dismissed because Defendants have failed to present any evidence of a willful act.

**B. Interference with Contractual Relations**

Interference with contractual relations requires: "(1) a valid and existing contract; (2) the defendant's knowledge of the

8

contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." <u>Sutherland v. Gross</u>, 772 P.2d 1287, 1290 (Nev. 1989). Defendants' counterclaim for interference with contractual relations alleged that Plaintiffs "committed intentional acts intended or designed to disrupt" contractual relations with "various entities, including, but not limited to Salman Partners, attempting to assist counterclaimants in taking WEX public." (Answer ¶ 31, 33 (#15).)

Plaintiffs argue that the only specific allegation to a contract is a purported contract between Defendants and Salman Partners, Inc., the investment bankers retained to assist WEX with its efforts to launch an IPO. (Motion for Summary Judgment at 14 (#63).) However, that contract was not entered into until October 2007, whereas Plaintiffs commenced this litigation in January of 2007. In their opposition (#68) to Plaintiffs' motion for summary judgment (#63), Defendants explain that "after being put on notice that [Plaintiffs'] meritless lawsuit would hamper the company's efforts to go public, if not stop those efforts outright, Plaintiffs continued to maintain the suit. Such actions constitute interference with contract and future economic advantage." (Opp. at 16 (#68).) The purported Salman Partners, Inc. contract was not entered into until October 2007, if at all, and since Plaintiffs initiated this action in January of 2007, we are hard pressed to find that there was an actual and existing contract that relates to Plaintiffs' actions in commencing this lawsuit, or even maintaining it.

Defendants have failed to show that there was a valid and existing contract that was actually disrupted by any conduct by Plaintiffs.  Defendants failed to respond to Plaintiffs' point that there was no valid contract. In fact, Plaintiffs assert that the Salman Partners, Inc. contract was not produced to Plaintiffs during discovery, and there is no evidence of the validity of the contract. Therefore, as a matter of law, we find that there is insufficient evidence to support a cause of action based on interference with contractual relations when the very existence of a contract is at question.  Even if the Salman Partners, Inc. contract is in fact actual and existing, we do not think that the maintenance of this lawsuit by Plaintiffs is the sort of conduct typically found to be interference with contractual relations.  The contract was allegedly entered into many months after the commencement of this action by Plaintiffs.  Salman Partners, Inc., then, was aware of the litigation when it entered into the contract, and therefore we cannot see how the contract was intentionally disrupted by Plaintiffs' maintenance of the lawsuit.  It may be, of course, that the existence of the lawsuit may have hampered Defendants' ability to successfully go public, but there is no evidence of an intentional and actual disruption of an existing contract, and Defendants' counterclaim for interference with contractual relations fails as a matter of law.

**C. Intentional Interference with Prospective Economic Advantage**

In Nevada, intentional interference with prospective economic advantage requires: "(1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the

defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct."  Wichinsky v. Mosa, 847 P.2d 727, 729-730 (Nev. 1993).

Defendants assert that Plaintiffs were approached about the IPO and the negative effects of the lawsuit, and Plaintiffs refused to dismiss the lawsuit.  This is the entire basis of Defendants' counterclaim for intentional interference with prospective economic advantage.  We find that Defendants have not presented enough evidence to support the tort of intentional interference with prospective business advantage.  As we noted above, the existence of this lawsuit may have hampered Defendants' ability to go public. There is no evidence, however, that the lawsuit was commenced or even maintained with any intention of hindering Defendants from going public.  Therefore, Defendants' counterclaim for intentional interference with prospective economic advantage fails as a matter of law.

### D. Remaining Arguments

Because we conclude that Defendants' counterclaims fail as a matter of law because Defendants failed to prove essential elements of the claims, we do not address Plaintiffs' arguments that Defendants failed to show any evidence of actual harm or damages. We also decline to strike Defendants' opposition (#68) on the basis that Local Rule 56-1 requires responses to "include a concise statement setting forth each fact material to the disposition of the

11

motion." We see no blatant violation of Local Rule 56-1 that would require the Court to strike Defendants' opposition (#68).

## IV. Conclusion

Defendants' counterclaim for abuse of process fails because the mere filing of a complaint cannot serve as the basis of an abuse of process claim. Defendants' counterclaim for interference with contractual relations fails because Defendants have not provided evidence that there was intentional disruption of an actual and existing contract. Defendants' counterclaim for intentional interference with prospective economic advantage fails because Defendants have not provided evidence that Plaintiffs' lawsuit was commenced or maintained with the intention of hindering Defendants' ability to go public.

**IT IS, THEREFORE, HEREBY ORDERED** that Plaintiffs' motion for summary judgment (#63) is **GRANTED**.

The Clerk shall enter judgment in favor of Defendants on all claims against Defendants in accordance with our previous Order (#49), and in favor of Plaintiffs on Defendants' counterclaims in accordance with the foregoing Order.

DATED: August 2, 2011.

_Edward C. Reed._
_____
UNITED STATES DISTRICT JUDGE

12